IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TAYLOR ADDY, | : | |
| Plaintiff, | : | Civil Action File No. |
| | : | |
| vs. | : | |
| | : | |
| JOBO'S, INC. d/b/a BJ ROOSTERS; ROBERT HAMILL; JOHN MOLINARI, | : : : | |
| | : | |
| Defendants. | : | |

**COMPLAINT**

Plaintiff Taylor Addy ("Addy") brings this Complaint against Defendants Jobo's, Inc. d/b/a BJ Roosters ("Jobo's"), Robert Hamill ("Hamill"), and John Molinari ("Molinari") and shows the Court as follows:

**1. INTRODUCTION**

1.

Jobo's paid Plaintiff Taylor Addy on the basis of his tips only and also required him to share those tips in violation of the Fair Labor Standards Act.

(a) **Jurisdiction and Venue**

2.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA §16(b), 29 U.S.C. § 216(b) and 28

U. S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

3.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Jobo's conducts business in Georgia, within this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

**(b) The Parties**

4.

Addy resides in Cobb County, Georgia.

5.

Jobo's employed Addy as a bartender from approximately August 2019 through December 2021 (hereinafter the "Relevant Time Period").

6.

At all times material hereto, Addy has been an "employee" of Jobo's within the meaning of the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

7.

Jobo's is a domestic limited liability company organized under the laws of the State of Georgia.

8.

At all times material hereto, Jobo's was an "employer" of Addy within the meaning of FLSA § 3(d), 29 U.S.C. §203(d).

9.

Jobo's is subject to the personal jurisdiction of this Court.

10.

Jobo's may be served with process through its registered agent Michael Sard located at 3789 Roswell Road, Atlanta, Georgia 30342.

11.

At all times material hereto, Addy was an "employee" of Hamill within the meaning of the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

12.

At all times material hereto, Hamill was an "employer" of Addy within the meaning of FLSA § 3(d), 29 U.S.C. §203(d).

13.

During the Relevant Time Period, Hamill was an owner of BJ Roosters.

14.

During the Relevant Time Period, Hamill was the CEO and Secretary of Jobo's.

15.

Hamill is subject to the personal jurisdiction of this Court.

16.

Hamill may be served with process at his principal office address located at 2043 Cheshire Bridge Road, NE, Atlanta, Georgia 30324 or wherever he may be located.

17.

At all times material hereto, Addy was an "employee" of Molinari within the meaning of the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

18.

At all times material hereto, Molinari was an "employer" of Addy within the meaning of FLSA § 3(d), 29 U.S.C. §203(d).

19.

At all times material hereto, Mr. Molinari was an owner of BJ Roosters.

20.

At all times material hereto, Mr. Molinari was an officer of Jobo's.

21.

At all times material hereto, Mr. Molinari was the CFO of Jobo's.

22.

Molinari is subject to the personal jurisdiction of this Court.

23.

Molinari may be served with process at his principal office address located at 2043 Cheshire Bridge Road, NE, Atlanta, Georgia 30324 or wherever he may be located.

**(c) Individual Coverage**

24.

During the Relevant Time Period, Addy used or handled the following items in the performance of his duties on behalf of Jobo's: wine, beer, liquor and other alcoholic products; food and food service items; computers; cash registers; credit card machines; and office supplies.

25.

During the Relevant Time Period, Addy was "engaged in commerce" as an employee of Jobo's within the meaning of 3(s)(1(A) and (B).

**(d) Enterprise Coverage:**

26.

At all times during the Relevant Time Period, Jobo's was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A)(i) and (ii) and (s)(1)(B).

27.

During 2019, Jobo's had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

28.

During 2020, Jobo's had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

29.

During 2021, Jobo's had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

30.

During the Relevant Time Period, Addy and other employees of Jobo's handled goods which moved in interstate commerce in the furtherance of the commercial purpose of Jobo's including, but not limited to, wine, beer, liquor and other alcoholic products; food and food service items; computers; cash registers; credit card machines; and office supplies.

31.

During 2019, Jobo's had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." within the meaning of 29 U.S.C. § 203(s)(1)(A).

32.

During 2020, Jobo's had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." within the meaning of 29 U.S.C. § 203(s)(1)(A).

33.

During 2021, Jobo's had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." within the meaning of 29 U.S.C. § 203(s)(1)(A).

34.

During 2019, Jobo's had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

35.

During 2020, Jobo's had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

36.

During 2021, Jobo's had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

37.

At all times during the Relevant Time Period, Jobo's has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

(e) **Statutory Employers**

38.

At all times during the Relevant Time Period, Hamill was an owner and manager of Jobo's.

39.

At all times during the Relevant Time Period, Hamill had authority to make business decisions on behalf of Jobo's.

40.

At all times during the Relevant Time Period, Hamill exercised operational control over Addy's work activities.

41.

At all times during the Relevant Time Period, Hamill managed the day-to-day operation of the Jobo's facility in which Addy worked.

42.

At all times during the Relevant Time Period, Jobo's vested Hamill with supervisory authority over Addy.

43.

At all times during the Relevant Time Period, Hamill exercised supervisory authority over Addy.

44.

At all times during the Relevant Time Period, Hamill scheduled Addy's working hours or supervised the scheduling of Addy's working hours.

45.

At all times during the Relevant Time Period, Hamill exercised authority and supervision over Addy's compensation.

46.

At all times during the Relevant Time Period, Hamill had authority to hire employees on behalf of Jobo's.

47.

At all times during the Relevant Time Period, Hamill had authority to terminate employees of Jobo's.

48.

At all times during the Relevant Time Period, Hamill had authority to discipline employees of Jobo's.

49.

At all times during the Relevant Time Period, Molinari was an owner and/or operator of Jobo's.

50.

At all times during the Relevant Time Period, Molinari had authority to make business decisions on behalf of Jobo's.

51.

At all times during the Relevant Time Period, Molinari exercised operational control over Addy's work activities.

52.

At all times during the Relevant Time Period, Molinari managed the day-to-day operation of the Jobo's facility in which Addy worked.

53.

At all times during the Relevant Time Period, Jobo's vested Molinari with supervisory authority over Addy.

54.

At all times during the Relevant Time Period, Molinari exercised supervisory authority over Addy.

55.

At all times during the Relevant Time Period, Molinari scheduled Addy's working hours or supervised the scheduling of Addy's working hours.

56.

At all times during the Relevant Time Period, Molinari exercised authority and supervision over Addy's compensation.

57.

At all times during the Relevant Time Period, Molinari had authority to hire employees on behalf of Jobo's.

58.

At all times during the Relevant Time Period, Molinari had authority to terminate employees of Jobo's.

59.

At all times during the Relevant Time Period, Molinari had authority to discipline employees of Jobo's.

### (f) No Exemptions to the FLSA Are Applicable

60.

At all times material hereto, Addy was not exempt from the minimum wage requirements of the FLSA by reason of any exemption.

### (g) Additional Factual Allegations

61.

At all times relevant from August 2019 through December 2021, Defendants employed Addy as a bartender.

62.

During the Relevant Time Period, Jobo's did not compensate Addy on a salaried basis.

63.

During the Relevant Time Period, Jobo's did not compensate Addy on an hourly rate basis.

64.

During the Relevant Time Period, Defendants failed to pay Addy any wages or compensation whatsoever.

65.

During the Relevant Time Period, Addy's sole form of remuneration for the work he performed for Defendants as a bartender was the receipt of tips from Defendants' customers.

66.

At all times material hereto, Addy's primary duty was tending to Defendants' bar as a bartender.

67.

During the period from approximately August 2019 through March 2021, Addy worked normally worked three (3) days during most, if not all, work weeks.

68.

During the period from approximately August 2019 through March 2021, Addy normally worked shifts from 9:00 p.m. until 3:00 a.m. or from 3:45 p.m. until 1:00 a.m.

69.

During the period from approximately April 2021 through December 2021, Addy worked one (1) day per week.

70.

During the period from approximately April 2021 through December 2021, Addy worked on Sundays from approximately 3:45 p.m. until 1:00 a.m.

71.

During the Relevant Time Period, Defendants required bartenders to be present at BJ Roosters at least 15 minutes prior to their scheduled shift.

72.

During the Relevant Time Period, Addy often worked 30 minutes to 1 hour after his scheduled shift cleaning up and performing side tasks.

73.

Pursuant to 29 C.F.R. § 531.35, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear."

74.

During the Relevant Time Period, Defendants required Addy to pay a portion of the tips he received directly to other employees for reasons other than the pooling of tips among employees who customarily and regularly receive tips.

75.

During the Relevant Time Period, Defendants required Addy to pay $20 each shift to tip out the kitchen.

76.

During the period from March 2020 through July 2020, Defendants required Addy to split his tips with the kitchen and a DJ.

77.

During the period from March 2020 through July 2020, Defendants required Addy to pay 1/3 of his tips to the kitchen during each work shift.

78.

During the period from March 2020 through July 2020, Defendants required Addy to pay 1/3 of his tips to the DJ during each work shift.

79.

During the Relevant Time Period, Defendants were aware of the actual number of hours Addy worked during each work week.

80.

Defendants knew or should have known that the FLSA applied to Addy.

81.

Section 6 of the FLSA (29 U.S.C. § 206) requires that Defendants compensate Addy at a rate of no less than $7.25 per hour for every hour worked in a work week.

82.

Defendants knew or should have known that the Section 6 of the FLSA requires that Defendants compensate Addy at a rate of at least $7.25 per hour for every hour worked in a work week.

83.

During the Relevant Time Period, Jobo's failed to compensate Addy at a rate of $7.25 per hour for each hour he worked.

84.

During the Relevant Time Period, Jobo's willfully failed to compensate Addy at a rate of $7.25 per hour for each hour she worked.

2. **COUNT 1 - FAILURE TO PAY MINIMUM WAGE**

85.

The allegations in paragraphs 1-84 above are incorporated herein by reference.

86.

At all times material hereto, Addy has been an employee covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

87.

During the Relevant Time Period, Defendants failed to pay Addy any wages whatsoever.

88.

During the Relevant Time Period, Defendants failed to compensate Addy at an hourly rate above or equal to the minimum wage as established in accordance with Section 6 of the FLSA.

89.

During the Relevant Time Period, Defendants willfully failed to compensate Addy at an hourly rate above or equal to the minimum wage as established in accordance with Section 6 of the FLSA.

90.

As a result of the underpayment of minimum wages, Defendants are liable to Addy in an amount equal to the amounts of the tip-outs that Defendants required Addy to pay to the kitchen and the DJ, in an amount to be determined at trial.

91.

As a result of the underpayment of minimum wages as alleged above, Addy is entitled to payment of minimum wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

92.

As a result of the underpayment of minimum wages as alleged above, Addy is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b), declaratory and injunctive relief, and reimbursement of his costs of litigation, including his reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Addy respectfully prays:

1. That his claims be tried before a jury;
2. That he be awarded due but unpaid minimum wages in an amount to be determined at trial against Defendants, jointly and severally, plus an additional like amount in liquidated damages;
3. That he be awarded an amount to amount to be determined at trial against Defendants in an amount equal to the tips he was required to pay to Defendants' kitchen staff and DJ as a condition of employment;
4. That he be awarded her costs of litigation, including his reasonable attorneys' fees from Defendants, jointly and severally;
5. That he be awarded nominal damages; and
6. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

|  |  |
|---|---|
|  | DELONG CALDWELL BRIDGERS FITZPATRICK & BENJAMIN, LLC |
| 101 MARIETTA STREET SUITE 2650 ATLANTA, GEORGIA 30303 (404) 979-3150 (404) 979-3170 (f) charlesbridgers@dcbflegal.com matthew.herrington@dcbflegal.com | /S/CHARLES R. BRIDGERS CHARLES R. BRIDGERS GA. BAR NO. 080791 MATTHEW W. HERRINGTON GA. BAR NO. 275411 |